T.C. Memo. 2006-145

UNITED STATES TAX COURT

AUSTIN L. MITCHELL AND REBECCA A. MITCHELL, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 18129-04.                    Filed July 6, 2006.

<u>Austin L. Mitchell</u> and Priscilla J. Lim (specially
recognized), for petitioners.

<u>Thomas C. Pliske</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

KROUPA, <u>Judge</u>:  Respondent determined deficiencies in
petitioners' Federal income taxes and that petitioners were

liable for accuracy-related penalties under section 6662(a)[1] for 1998, 1999, and 2000 (the years at issue). For 1998, respondent determined a $1,060 deficiency and $212 accuracy-related penalty. For 1999, respondent determined a $946 deficiency and $189 accuracy-related penalty. For 2000, respondent determined a $1,346 deficiency and $284 accuracy-related penalty.

There are two issues for decision. The first is whether petitioner Austin L. Mitchell (petitioner)[2] conducted his farming activity for profit during the years at issue. We hold he did not. The second issue is whether petitioners are liable for the accuracy-related penalty for their underpayments of tax in the years at issue. We hold they are liable.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and the accompanying exhibits are incorporated by this reference. Petitioners resided in Salem, Missouri, at the time they filed the petition.

Petitioner

Petitioner's family owned and operated a farm (the family farm) in the Salem area for more than 100 years. Petitioner grew

---

[1]All section references are to the Internal Revenue Code in effect for the years at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated.

[2]References to petitioner's wife are to Mrs. Mitchell.

up on the family farm and worked on it during his childhood through his college years. Petitioner assumed greater responsibility for maintaining the family farm during his adolescence because of his father's declining health. Petitioner worked with livestock and row crops. The family farm was "running 100 bushel of corn to the acre" under petitioner's stewardship, a prodigious result.

Since 1977, petitioner has worked as an attorney and CPA in the Salem area. Many of petitioner's clients are farmers. Petitioner is a hard-working individual and has been financially successful as an attorney and CPA, his chosen professions, which he enjoys. Petitioner worked approximately 2,800 to 3,100 hours per year in those professional occupations in each of the years at issue.

The Family Farm

Petitioner's mother owned the family farm until her death in April 1992. The family farm consisted of approximately 38 acres of tillable bottom land, 35 to 40 acres of pasture, a 20-acre timber stand, and a dwelling. The timber stand consisted primarily of black walnut and white oak trees at different stages of maturity. Both types of trees can produce revenue for a landowner. Premature trees can be thinned and sold as pulpwood, and mature trees can be harvested for board wood (lumber). From the time a sapling is planted, it will be 50 years before the

tree reaches maturity. Black walnut trees also produce edible nuts that may be sold.

Glen B. Harris (Harris) has been planting, harvesting, and baling hay on the family farm since 1971. Harris is petitioner's brother-in-law, resides near the family farm, and is an experienced farmer. Harris worked on the family farm as a result of a two-part arrangement he had with petitioner's mother. First, petitioner's mother hired Harris to perform work on the farm, including haying. Second, Harris rented the pastures from petitioner's mother to graze his cattle.

Petitioners moved into the house on the family farm in November 1991 to care for petitioner's elderly mother. Shortly thereafter, in April 1992, petitioner's mother passed away, and petitioner inherited the family farm. Petitioner and Harris adopted a two-part barter arrangement with respect to Harris's farming activities on the family farm after the inheritance. Harris could continue to hay on the family farm at his own expense and could keep all the hay harvested in exchange for taking general care of the land. Also, Harris could graze his cattle on the family farm pasture land in exchange for liming and fertilizing the hayfields.

Petitioner and Harris changed these arrangements in 1999. Petitioner and Harris changed the haying arrangement to "custom baling on the shares." Custom baling on the shares is a common

arrangement where one party does all the haying work on another's land and each keeps 50 percent of the hay. Petitioner and Harris also changed the pasturing arrangement in 1999. Petitioner agreed to pay Harris to lime, fertilize, and maintain fencing and Harris agreed to pay pasture land rental fees to petitioner. The fees petitioner paid Harris for his services exactly offset the pasture land rental fees Harris paid petitioner.

During October 1999, petitioner selectively harvested his existing timber stand. This resulted in 62,000 board feet of non-white oak lumber and 8,193 feet of white oak lumber, which generated $7,500 of revenue. Petitioner consulted a logging expert to advise him which trees to cut.

Petitioner also spent significant time from 1992 through the years at issue working on the family farm. Each year, he spent evenings and weekends from mid-April to September performing two kinds of tasks. Petitioner worked at converting 10 acres of uphill pasture to timber by planting numerous white oak and black walnut seedlings. Petitioner also worked at weed control in various ways. He cleared multiflora rose and native thistle from the pasture land and bottom land, and mowed in the converted timber stand to facilitate tree growth. In general, petitioner enjoyed the hard physical labor he performed on the family farm and believed he might derive health benefits from it as well.

Petitioner consulted with neighboring farmers since moving to the family farm.

Petitioner did not have a written business plan for his farming activity. Nor did petitioner maintain a cash receipts book, a general ledger, or a separate checking account for the farming activity. The family farm, however, is quite important to petitioner. Petitioner intended to build the farm and make it productive before leaving the farm to his children. To date, petitioner has lost approximately $80,000 to $90,000 as a result of conducting the farming activity.

Petitioners' Income Tax Returns and the Deficiency Notice

Petitioners filed joint income tax returns for the years at issue on Forms 1040, U.S. Individual Income Tax Return, which petitioner himself prepared. Petitioner reported net losses on Schedules F, Profit or Loss From Farming, of $2,352 for 1998, $2,140 for 1999, and $4,679 for 2000. In 1998, petitioner reported no income from the farm and expenses of $2,352. In 1999, petitioner reported $4,155 of income from the farm and expenses of $6,295. Also in 1999, petitioner reported $7,500 of income from the sale of timber on Schedule D, Capital Gains and Losses. In 2000, petitioner reported $1,690 of income from the farm and expenses of $6,369. Petitioner deducted the net losses from the farming activity against other income reported on the tax returns for the years at issue.

Respondent increased petitioner's gross income by the amount of petitioner's farm expenses in each of the years at issue in a deficiency notice dated June 25, 2004 (the deficiency notice). Respondent determined that petitioner did not conduct the farming activity with the intent to earn a profit under section 183(a). Respondent also determined that petitioner's various undertakings on the family farm were not one activity for purposes of the section 183 analysis. Finally, respondent determined that petitioners were liable for the accuracy-related penalty because petitioners' underpayments of taxes were due to negligence or disregard of rules or regulations. Petitioners timely filed a petition seeking a redetermination of respondent's determinations in the deficiency notice.

OPINION

This is the third time that we have been asked to decide whether petitioner conducted the farming activity for profit. We held petitioner did not conduct the farming activity for profit in 1992 and 1993. Mitchell v. Commissioner, T.C. Summary Opinion 1998-200. We similarly held that petitioner did not conduct the farming activity for profit in 1995, 1996, and 1997. Mitchell v. Commissioner, T.C. Memo. 2001-269.

A.  Section 183 Generally

Section 183(a) provides generally that if an individual engages in an activity and "if such activity is not engaged in

for profit, no deduction attributable to such activity shall be allowed under this chapter except as provided in this section." Deductions that would be allowable without regard to whether the activity is engaged in for profit shall be allowed under section 183(b)(1), and deductions that would be allowable only if the activity is engaged in for profit shall be allowed under section 183(b)(2), but only to the extent that the gross income from the activity exceeds the deductions allowable under section 183(b)(1).

We begin with the burden of proof. In general, the Commissioner's determinations in the deficiency notice are presumed correct, and the taxpayer bears the burden of proving that the Commissioner's determinations are in error. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). Petitioner did not assert that the burden shifted to respondent under section 7491. We therefore treat petitioner as having conceded this issue and find that the burden remains with petitioner.

We follow the Court of Appeals opinion squarely on point when appeal from our decision would lie to that court absent stipulation by the parties to the contrary. Golsen v. Commissioner, 54 T.C. 742 (1970), affd. 445 F.2d 985 (10th Cir. 1971). A taxpayer residing in the Eighth Circuit, such as petitioner, must prove he or she conducted the activity with an actual and honest objective of making a profit. See Evans v.

Commissioner, 908 F.2d 369, 373 (8th Cir. 1990), revg. T.C. Memo. 1988-468; Antonides v. Commissioner, 91 T.C. 686, 693-694 (1988), affd. 893 F.2d 656 (4th Cir. 1990); Dreicer v. Commissioner, 78 T.C. 642, 645 (1982), affd. without opinion 702 F.2d 1205 (D.C. Cir. 1983).

The expectation of profit need not have been reasonable. The taxpayer must have entered into the activity or continued it, however, with the profit motive. Hulter v. Commissioner, 91 T.C. 371, 393 (1988); sec. 1.183-2(a), Income Tax Regs. Whether a taxpayer has the requisite profit motive is determined on the basis of all surrounding facts and circumstances. Dreicer v. Commissioner, supra at 645; sec. 1.183-2(b), Income Tax Regs. We give greater weight to objective facts than to a taxpayer's statements of intent. Dreicer v. Commissioner, supra at 645; sec. 1.183-2(a), Income Tax Regs.

Before we address whether petitioner had the requisite profit motive based on the facts and circumstances, we first must address two threshold issues. First, whether petitioner's tree planting, mature timber harvesting, and haying undertakings may be treated as one activity. Second, whether petitioner is entitled to the presumption of a profit motive.

1.   <u>Whether the Undertakings May Be Treated as One Activity</u>

Respondent argues that we may not aggregate petitioner's tree-planting, mature timber harvesting, and haying undertakings as one activity.  We disagree.

Multiple undertakings of a taxpayer may be treated as one activity if the undertakings are sufficiently interconnected. Sec. 1.183-1(d)(1), Income Tax Regs.  The most important factors in making this determination are the degree of organizational and economic interrelationship of the undertakings, the business purpose served by carrying on the undertakings separately or together, and the similarity of the undertakings.  <u>Id.</u>  The Commissioner generally accepts the taxpayer's characterization of two or more undertakings as one activity unless the characterization is artificial or unreasonable.  <u>Id.</u>

We have considered these and other factors in determining whether the taxpayer's characterization is unreasonable.  The factors so considered include:  (a) Whether the undertakings are conducted at the same place; (b) whether the undertakings were part of the taxpayer's efforts to find sources of revenue from his or her land; (c) whether the undertakings were formed as separate businesses; (d) whether one undertaking benefited from the other; (e) whether the taxpayer used one undertaking to advertise the other; (f) the degree to which the undertakings shared management; (g) the degree to which one caretaker oversaw

the assets of both undertakings; (h) whether the taxpayer used the same accountant for the undertakings; and (i) the degree to which the undertakings shared books and records. See Keanini v. Commissioner, 94 T.C. 41, 46 (1990); Tobin v. Commissioner, T.C. Memo. 1999-328; Estate of Brockenbrough v. Commissioner, T.C. Memo. 1998-454; Hoyle v. Commissioner, T.C. Memo. 1994-592; De Mendoza v. Commissioner, T.C. Memo. 1994-314; Scheidt v. Commissioner, T.C. Memo. 1992-9.

We find it is appropriate to treat petitioner's various farming undertakings as one activity. The undertakings are all agricultural and were performed at the family farm. The undertakings all demonstrate petitioner's efforts to generate revenue from the family farm. The mature timber harvesting and the haying generated current revenue while the tree-planting may generate future revenue. The undertakings were not formed as separate businesses. The tree-planting undertaking benefited from the mature timber harvesting undertaking as mature timber harvesting made additional land available for tree-planting. Petitioner managed all the undertakings. Petitioner himself was the accountant for all the undertakings. Finally, petitioner used one checking account to pay the expenses of and to deposit the revenues from the various undertakings.

After reviewing these factors and the facts and circumstances of this case, we find that petitioner's tree-

planting, mature timber harvesting, and haying undertakings may be treated as one activity. We therefore reject respondent's determination in the deficiency notice. By treating the undertakings as one activity, we note that petitioner reported $7,500 from the sale of timber, $4,155 from the sale of hay, and claimed farm expenses of $6,295 in 1999. Accordingly, petitioner had a net profit from the farming activity in 1999, and we therefore do not sustain respondent's disallowance of the claimed farm expenses as to 1999. Furthermore, we shall consider all petitioner's farming undertakings as one activity in analyzing whether petitioner conducted the farming activity with an actual and honest objective of making a profit during 1998 and 2000.

## 2. Whether the Section 183(d) Presumption Applies

We next address whether petitioner is entitled to the section 183(d) presumption of a profit motive. Petitioner contends that he qualifies for the profit motive presumption under section 183(d) for 1998 and 2000 by arguing that the gross income derived from the farming activity exceeded the deductions attributable to the activity in 1999, 2001, 2003, and 2004. We disagree. Section 183(d) presumes an activity is conducted for profit if the gross income exceeds the attributable deductions for 3[3] out of 5 consecutive years (the gross income test).[4] The

---

[3]We note that sec. 1.183-1(c)(1), Income Tax Regs., has not been amended to conform to the statutory changes made in 1986.
(continued...)

presumption applies only after the third profit year. Sec. 183(d). Because petitioner did not report gross income in excess of attributable deductions from the farming activities in three or more of the years 1994 to 1999, petitioner is not entitled to the section 183(d) presumption for either 1998 or 2000.

B.    Whether Petitioner Conducted the Farming Activity for Profit During 1998 and 2000

We now address whether petitioner engaged in the farming activity with an actual and honest objective of making a profit considering all the pertinent facts and circumstances. We structure our analysis around nine nonexclusive factors in determining whether petitioner had an actual and honest objective of making a profit from the farming activity during 1998 and 2000. See 1.183-2(b), Income Tax Regs.

The nine factors are: (1) The manner in which the taxpayer carries on the activity; (2) the expertise of the taxpayer or his or her advisers; (3) the time and effort expended by the taxpayer in carrying on the activity; (4) the expectation that the assets used in the activity may appreciate in value; (5) the success of the taxpayer in carrying on other similar or dissimilar

---

[3](...continued)
See Tax Reform Act of 1986, Pub. L. 99-514, sec. 143(a)(1) and (2), 100 Stat. 2120.

[4]A different gross income test applies for an activity that consists of the breeding, training, showing, or racing of horses. Sec. 183(d) (second sentence).

activities; (6) the taxpayer's history of income or loss with respect to the activity; (7) the amount of occasional profits, if any, which are earned; (8) the financial status of the taxpayer; and (9) whether elements of personal pleasure or recreation are involved.  Id.

No one factor or set of factors is controlling, nor is the existence of a majority of factors favoring or disfavoring a profit motive necessarily controlling.  Hendricks v. Commissioner, 32 F.3d 94, 98 (4th Cir. 1994), affg. T.C. Memo. 1993-396; Brannen v. Commissioner, 722 F.2d 695, 704 (11th Cir. 1984), affg. 78 T.C. 471 (1982); sec. 1.183-2(b), Income Tax Regs.  The individual facts and circumstances of each case are the primary test.  Keanini v. Commissioner, supra at 46; Allen v. Commissioner, 72 T.C. 28, 34 (1979); sec. 1.183-2(b), Income Tax Regs.

C.   Application of the Factors

1.   The Manner in Which the Taxpayer Conducts the Activity

We begin by examining the manner in which petitioner carried on the farming activity.  Carrying on an activity in a businesslike manner may indicate a profit objective.  Sec. 1.183-2(b)(1), Income Tax Regs.  In determining whether a taxpayer conducted an activity in a businesslike manner, we consider whether the taxpayer maintained complete and accurate books and records and also whether changes were attempted in an effort to

earn a profit. Engdahl v. Commissioner, 72 T.C. 659, 666-667 (1979); sec. 1.183-2(b)(1), Income Tax Regs.

Petitioner did not present any documentary evidence to prove the existence of complete and accurate books and records for the farming activity. Petitioner did not maintain a separate bank account for the farming activity. Instead, he used one account for personal use, the farming activity, and for his legal practice.

Petitioner asserts that because he did not maintain a separate bank account for his law practice, which petitioner operated with a profit motive, we should infer a profit motive from petitioner's lacking a separate bank account for the farming activity. We disagree. The lack of a separate bank account for petitioner's farming activity, coupled with the lack of complete and accurate books and records, tends to show that petitioner did not carry on the farming activity in a businesslike manner. Cf. Kahle v. Commissioner, T.C. Memo. 1991-203.

Petitioner also had no written business plan, nor offered any documentary evidence showing he contemplated, before beginning the farming activity, how to make it profitable. Petitioner did not advertise the farming activity in an attempt to increase its profitability. These facts lead us to conclude that petitioner did not carry on the farming activity in a businesslike manner. Sec. 1.183-2(b)(1), Income Tax Regs.

Nor has petitioner attempted to make the farming activity profitable by changing his conduct over the years.  Rather, we find it remarkable how little petitioner has changed the farming activity despite years of operating losses.  Petitioner primarily relies on the changes in his arrangement with Harris made in 1999 as demonstrating his attempt to earn a profit.  We find that the change in the pasture land arrangement was just a change in form but not substance because the amounts of money exchanged offset each other.  We find, however, that the change in the haying arrangement with Harris in 1999 was substantive because petitioner received half the hay after the change while before he received none of the hay.  This enabled petitioner to sell hay to generate revenues, which he did.

We find that this one change does not outweigh the lack of complete and accurate books and records and the absence of other indicia that petitioner conducted the farming activity in a businesslike manner.  This factor favors respondent.

2.   <u>Expertise of the Taxpayer or His Advisers</u>

We next consider petitioner's expertise and that of his advisers.  Preparing for an activity by extensive study on one's own or by consulting with experts and conducting the activity in accordance with what has been learned indicates that the taxpayer had an actual and honest profit objective.  Sec. 1.183-2(b)(2), Income Tax Regs.

Petitioner contends that he had the necessary expertise in farming to operate a farm for profit. He was born and raised on the family farm. He had previous experience producing row crops, hay, and livestock. He had conversations with other farmers in the area.[5] Additionally, he consulted with two expert advisers, Harris and a sawyer.

The record does not show, however, that petitioner knew how or intended to make a profit from his current farming undertakings. He did not seek expert advice on how to operate his farm profitably. He discussed farming with his farmer clients and farmer neighbors, but there is no evidence that they gave him advice about farming for profit. This factor favors respondent.

### 3. The Taxpayer's Time and Effort

We next consider the time and effort petitioner expended in conducting the farming activity. A taxpayer's devotion of much time and effort to conducting an activity, particularly if the activity does not have substantial personal or recreational aspects, may indicate an intention to derive a profit. Sec. 1.183-2(b)(3), Income Tax Regs.

---

[5]Petitioner also testified that he consulted experts after 2000. Stating the obvious, petitioner could not possibly have carried on the farming activity during 1998 and 2000 in accordance with expertise garnered later. This testimony is therefore irrelevant.

During the years at issue, petitioners resided at the family farm. They derived personal and recreational benefits from the situs of the farming activity. Petitioner devoted regular and substantial time and effort to the farming activity, although he continued to work an average of more than 50 hours per week as a lawyer and accountant. Petitioner did not explain how the work he performed on the family farm related to making it profitable. This factor favors respondent.

4. The Expectation That the Assets Used in the Activity May Appreciate in Value

We next examine the expectation that the assets used in conducting the activity may appreciate in value. A taxpayer may intend, despite the lack of profits from current operations, that an overall profit will result when appreciation in the value of assets used in the activity is realized. Bessenyey v. Commissioner, 45 T.C. 261, 274 (1965), affd. 379 F.2d 252 (2d Cir. 1967); sec. 1.183-2(b)(4), Income Tax Regs. Petitioner intends to give the family farm to his sons, not sell it. Thus, petitioner is not relying on the appreciation of the family farm's assets to offset the losses sustained from his farming activity. This factor favors respondent.

5. Success in Similar or Dissimilar Activities

We next examine the success of petitioner in carrying on other similar or dissimilar activities. If a taxpayer has previously engaged in similar activities and made them

profitable, this success may show that the taxpayer has a profit motive for the activity at issue, even though the activity is presently unprofitable. Sec. 1.183-2(b)(5), Income Tax Regs. A taxpayer's success in dissimilar activities may also indicate a profit motive. See Daugherty v. Commissioner, T.C. Memo. 1983-188.

Petitioner argued that his previous work on the family farm as a teenager indicates that he was previously successful in a similar activity. Petitioner did describe in detail how much corn was cropped due to his efforts, but he did not prove that the family farm was financially successful during those years. Accordingly, petitioner's prior work on the family farm does not support a finding for petitioner.

Petitioner is a licensed CPA and has a legal practice. We find that petitioner is hard-working and dedicated to his professional pursuits. Petitioner's success in a CPA and legal practice, however, does not equate with petitioner conducting the farming activity with an honest and actual objective of making a profit. This factor favors respondent.

6. Taxpayer's History of Income or Losses

We next examine petitioner's history of income or loss with respect to the farming activity. A history of substantial losses may indicate that the taxpayer did not conduct the activity for profit. Golanty v. Commissioner, 72 T.C. 411, 427 (1979), affd.

without published opinion 647 F.2d 170 (9th Cir. 1981); sec. 1.183-2(b)(6), Income Tax Regs.

Petitioner generated revenue from the farming activity in 1999 and 2000, resulting in a net profit in 1999, but he incurred a net loss in 1998 and 2000. Despite the 1999 net profit, petitioner has claimed losses between $80,000 and $90,000 from conducting the farming activity since 1991. This factor favors respondent.

7. Amount of Occasional Profits, If Any

We next consider the amount of occasional profits, if any, that petitioner earned through 2000. Occasional profits the taxpayer earned from the activity, in relation to the amount of losses incurred, the amount of the taxpayer's investment, and the value of the assets used in the activity may provide useful criteria in determining the taxpayer's intent. Sec. 1.183-2(b)(7), Income Tax Regs. We consider the increasing size, width, volume, and value of the taxpayer's harvestable timber when we apply this factor to a tree-farming activity. Kurzet v. Commissioner, T.C. Memo. 1997-54, affd. in part, revd. and remanded on other grounds 222 F.3d 830 (10th Cir. 2000).

Petitioner earned a profit from the farming activity in 1999. Respondent contends that we should give little weight to the 1999 profit because it was partially due to selling mature timber that petitioner could have sold in other years. We

disagree. Petitioner received $7,500 in exchange for mature timber harvested from the family farm in 1999. If petitioner had sold the timber in some other year, he possibly would have had a net profit then from which we would have drawn the same favorable inference. Petitioner's net profit in 1999 is not diminished because he could have realized it in another year.

Petitioner also contends that this factor should favor him because he showed a net profit in 2001, 2003, and 2004. We place no weight on events that arose after 2000. This factor is neutral.

### 8. The Taxpayer's Financial Status

We next examine petitioner's financial status. If a taxpayer does not have substantial income or capital from sources other than the activity in question, it may indicate that the taxpayer engages in the activity for profit. Sec. 1.183-2(b)(8), Income Tax Regs. Conversely, substantial income from sources other than the activity, especially if the losses from the activity generate large tax benefits, may indicate that the taxpayer is not conducting the activity for profit. Id. Substantial income is, in this analysis, income well in excess of that which is needed by the average taxpayer to meet ordinary living expenses. See Bessenyey v. Commissioner, 45 T.C. at 274. Taxpayers with substantial income from other sources have a

greater tax incentive to incur large expenditures in a hobby type of activity. Jackson v. Commissioner, 59 T.C. 312, 317 (1972).

Although petitioner was successful as an attorney and CPA, petitioner did not earn income from these pursuits substantial enough to motivate him to incur losses from the farming activity. Cf. Jackson v. Commissioner, supra; Bessenyey v. Commissioner, supra. The size of the farming activity losses claimed during 1998 and 2000 was small in whole dollar amounts given petitioners' marginal income tax bracket. This factor favors petitioner.

### 9. Elements of Personal Pleasure or Recreation

We finally consider whether elements of personal pleasure or recreation were involved in petitioner's farming activity. The presence of personal motives for, or recreational elements associated with, conducting the activity may indicate that the taxpayer does not have a profit motive. Jackson v. Commissioner, supra; sec. 1.183-2(b)(9), Income Tax Regs.

Petitioner grew up on the family farm and inherited it in 1992. While farming does involve hard manual labor, petitioner enjoyed doing the work. Petitioners have resided on the family farm since 1991, an additional personal motive for engaging in the farming activity. This factor is neutral.

### 10. Conclusion

The nine nonexclusive factors and the facts and circumstances of this case lead us to conclude that petitioner

did not conduct the farming activity with an actual and honest objective of making a profit in 1998 or 2000. The net losses petitioner sustained conducting the farming activity are therefore not deductible from gross income. Accordingly, we sustain respondent's determinations in the deficiency notice for 1998 and 2000.

D.   <u>Whether Petitioners Are Liable for the Accuracy-Related Penalty</u>

We next consider whether petitioners are liable for the accuracy-related penalty under section 6662(a). Respondent asserts that all or part of the underpayment of tax for the years at issue is due to negligence or disregard of rules or regulations. We have found that there is no underpayment of tax for 1999. Accordingly, petitioners are not liable for the accuracy-related penalty for 1999.

A penalty applies to the portion of an underpayment of income tax attributable to negligence or disregard of rules or regulations. Sec. 6662(a) and (b)(1). Negligence is defined as "any failure to make a reasonable attempt to comply with the provisions of * * * [the Code]." Sec. 6662(c). Negligence is the lack of due care or the failure to do what a reasonable and prudent person would do under the circumstances. <u>Neely v. Commissioner</u>, 85 T.C. 934, 937 (1985). Disregard encompasses any "careless, reckless or intentional disregard." Sec. 6662(c).

Respondent has the burden of production regarding penalties and must come forward with sufficient evidence that it is

appropriate to impose the penalty. See sec. 7491(c); Higbee v. Commissioner, 116 T.C. 438, 446-447 (2001). Respondent relies on the two prior decisions this Court issued holding that petitioner did not conduct the farming activity for a profit. Mitchell v. Commissioner, T.C. Memo. 2001-269;[6] Mitchell v. Commissioner, T.C. Summary Opinion 1998-200.[7] Respondent argues, and we agree, that, absent substantial changes in its operation, the farming activity was not conducted for profit pursuant to section 183. We find that respondent has met his burden of production regarding 1998 and 2000.

The accuracy-related penalty does not apply to any portion of an underpayment, however, if the taxpayer shows that there was reasonable cause for, and that the taxpayer acted in good faith with respect to, that portion. Sec. 6664(c)(1); sec. 1.6664-4(b), Income Tax Regs. Petitioners have the burden of proving that the accuracy-related penalty does not apply because of this exception. See Higbee v. Commissioner, supra at 446.

The determination of whether the taxpayer acted with reasonable cause and in good faith depends upon the pertinent facts and circumstances. We emphasize the taxpayer's efforts to

---

[6]We note that Mitchell v. Commissioner, T.C. Memo. 2001-269, was not issued until Oct. 4, 2001, which is after the due date for filing a return for 2000.

[7]Summary opinions should not be cited as authority. Sec. 7463. We consider it here for the limited purpose of deciding whether respondent met his burden of production as to the accuracy-related penalty for 1998 and 2000.

assess the proper tax liability, considering the experience, knowledge, and education of the taxpayer.  Sec. 1.6664-4(b)(1), Income Tax Regs.

Petitioner is an accountant and lawyer.  He represents clients before the IRS and is a member of this Court's bar.  He is conversant with section 183 and the regulations.  Despite all this, petitioners deducted farm losses even though petitioner still had not manifested an actual and honest objective of making a profit from the farm during 1998 and 2000.  We find that petitioners did not act in good faith in claiming Schedule F farming losses and their underpayments were not due to reasonable cause.  Petitioners disregarded rules or regulations by deducting the net losses from the farm.  We conclude that petitioners are liable for the accuracy-related penalty under section 6662(a) for the underpayments of tax in 1998 and 2000.

To reflect the foregoing,

Decision will be entered for respondent for 1998 and 2000, and for petitioners for 1999.