T.C. Summary Opinion 2011-42

UNITED STATES TAX COURT

FREDDIE AND EDITH STROMATT, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 5339-07S.                    Filed April 6, 2011.

Freddie and Edith Stromatt, pro sese.

<u>Beth A. Nunnink</u>, for respondent.


GALE, <u>Judge</u>:  This case was heard pursuant to the provisions of section 7463 of the Internal Revenue Code in effect when the petition was filed.[1]  Pursuant to section 7463(b), the decision to be entered is not reviewable by any other court, and this

---

[1]Unless otherwise noted, all section references are to the Internal Revenue Code of 1986, as in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

opinion shall not be treated as precedent for any other case. All dollar amounts have been rounded to the nearest dollar.

Respondent determined income tax deficiencies of $7,076, $2,048, and $2,272 for petitioners' 2002, 2003, and 2004 taxable years, respectively, and accuracy-related penalties under section 6662 for those years of $1,415, $410, and $454, respectively. The issues for decision are: (1) Whether petitioners' farming activity for 2002, 2003, and 2004 constituted an activity not engaged in for profit within the meaning of section 183; (2) whether petitioners substantiated their farming expenses claimed for 2002, 2003, and 2004; and (3) whether petitioners are liable for accuracy-related penalties under section 6662 for 2002, 2003, and 2004.

## Background

Some of the facts have been stipulated and are so found. The stipulation of facts, with accompanying exhibits, is incorporated herein by this reference. At the time the petition was filed, petitioners resided in Tennessee.

### Farming Activity

In 1999 petitioners purchased an approximately 15-acre parcel of land near Dickson, Tennessee. Petitioner Edith Stromatt (Mrs. Stromatt) had retired before the land was purchased, and petitioner Freddie Stromatt (Mr. Stromatt) retired shortly thereafter.

In 2000 petitioners constructed a two-bedroom, one-bath house of approximately 792 square feet on the property. Mrs. Stromatt's father lived in the house from 2000 until his death in 2006. Petitioners did not live in the house or elsewhere on the property during the years at issue (2002-2004).

During 2000 and 2001 petitioners cleared the acreage, which had been untended for approximately 25 years and was overgrown with brush and trees, to prepare it for use as pasture, including the production of hay. Mr. Stromatt and Mrs. Stromatt's father operated the tractor and Bush Hog used for clearing the land, including pulling tree stumps. During 2001 and 2002 petitioners installed fencing and fertilized. This work was also performed by Mr. Stromatt and Mrs. Stromatt's father.

Petitioners harvested their first hay in 2001 and continued producing hay during the years at issue, harvesting it with rented equipment. Mr. Stromatt and Mrs. Stromatt's father performed this labor. Petitioners sold the hay, and these sales constituted the only income generated from the farming activity during the years at issue.

Petitioners first purchased cattle in 2005, acquiring six pregnant heifers. By the end of 2005 petitioners owned 17 head of cattle.

Mrs. Stromatt's father provided advice to petitioners on farming, including the number of cattle that could be supported on 15 acres of land.

Mrs. Stromatt's father was an experienced farmer, and Mrs. Stromatt grew up on a farm.

Farming Ledger

Mrs. Stromatt maintained a ledger for recording farming activity expenses (farming ledger) and kept all receipts that related to farming activity expenses.  The farming ledger included both annual summary accounts as well as monthly accounts for some months and accounts for some specific items, such as electricity and utility expenses.  Mrs. Stromatt posted items in the farming ledger regularly, often making additions more than once per week.  Mrs. Stromatt presented the farming ledger and the receipts to petitioners' return preparer for use in preparing petitioners' Federal income tax returns.

Petitioners' Reported Income and Expenses

The following table summarizes the income and expenses that petitioners reported during the period 2001-2007.

| Year | Farming Income | Farming Expenses | Profit (Loss) From Farming | Total Income From Other Sources[1] |
|------|----------------|------------------|----------------------------|------------------------------------|
| 2001 | $1,600 | $21,692 | ($20,092) | $152,718 |
| 2002 | 1,400 | 27,321 | (25,921) | 134,596 |
| 2003 | 2,100 | 19,258 | (17,158) | 74,778 |
| 2004 | 2,300 | 16,397 | (14,097) | 87,732 |
| 2005 | 1,700 | [2]4,226 | ( 2,526) | 116,848 |
| 2006 | 3,500 | [2]2,550 | 950 | 38,893 |
| 2007 | 4,760 | [2]3,517 | 1,243 | 22,596 |

[1]In each year petitioners also had gambling income that was completely offset by gambling losses.

[2]Mrs. Stromatt conceded that petitioners stopped deducting all of the expenses of the farming activity after respondent commenced an examination of petitioners' returns in 2005.

Examination

Respondent commenced an examination for petitioners' taxable years 2002-2004 in 2005. Respondent's examining agent inspected the petitioners' books and records, including the farming ledger. The examining agent was satisfied with the substantiation of petitioners' income and expenses with respect to the farming activity.

Notice of Deficiency

Respondent issued a notice of deficiency to petitioners for the years at issue, disallowing farming losses claimed on Schedules F, Profit or Loss From Farming, of $25,921, $17,158,

and $14,097 for 2002, 2003, and 2004, respectively,[2] on the alternative grounds that the activity giving rise to the losses was "not engaged in for profit" within the meaning of section 183 or that petitioners did not substantiate the losses.[3]

Pretrial Proceedings

As part of the pretrial proceedings, respondent made an informal request and then a formal request for all of petitioners' books and records. Petitioners responded by requesting a copy of their administrative file. After receiving the administrative file, which did not include the farming ledger, petitioners sent a letter to respondent stating that the administrative file showed that petitioners had substantiated all of their expenses. Petitioners did not produce the farming ledger or any other documents that respondent had requested until the day before trial.

## Discussion

I.   Section 183

A.   Scope of Activity

Respondent disallowed petitioners' claimed farming losses on the grounds that the activity giving rise to the losses was "not

---

[2]The disallowance of the Schedule F losses resulted in computational adjustments to petitioners' itemized deductions for each year.

[3]According to respondent's counsel, while the examining agent was satisfied with petitioners' substantiation, the Appeals Office was not.

engaged in for profit" within the meaning of section 183. Petitioners contend that the activity was engaged in for profit.

At the outset, we must resolve a question of the scope of the activity that is at issue. Petitioners reported their activity on the Schedules F as a "beef cattle ranch". Respondent argues that petitioners did not own any cattle during the years in issue and were instead only harvesting hay. We are satisfied that petitioners' preparation of their land for hay cultivation, given the hay's eventual use as feed for their cattle, bore an "economic interrelationship" with their later cattle operation so that the two undertakings were a single activity for purposes of section 183. See sec. 1.183-1(d)(1), Income Tax Regs.; see also Mitchell v. Commissioner, T.C. Memo. 2006-145; Tobin v. Commissioner, T.C. Memo. 1999-328. Moreover, their sale of hay during the years in issue demonstrates that the activity was beyond the preparatory stage. See Richmond Television Corp. v. United States, 345 F.2d 901, 907 (4th Cir. 1965), vacated and remanded per curiam on other grounds 382 U.S. 68 (1965). Accordingly, the hay cultivation and contemplated cattle husbandry are hereinafter analyzed together as a single activity referred to as petitioners' farming activity.

B.   Determining Profit Objective

1.   In General

Section 183(c) defines an activity not engaged in for profit as "any activity other than one with respect to which deductions are allowable for the taxable year under section 162 or under paragraph (1) or (2) of section 212."  In general, deductions are allowable under section 162 or 212 for activities in which the taxpayer engaged with the primary purpose and dominant hope and intent of realizing a profit.  Commissioner v. Groetzinger, 480 U.S. 23, 35 (1987); Hayden v. Commissioner, 889 F.2d 1548, 1552 (6th Cir. 1989), affg. T.C. Memo. 1988-310; Novak v. Commissioner, T.C. Memo. 2000-234.  "An activity is engaged in for profit if the taxpayer entertained an actual and honest, even though unreasonable or unrealistic, profit objective in engaging in the activity."  Campbell v. Commissioner, 868 F.2d 833, 836 (6th Cir. 1989), affg. in part, revg. in part and remanding T.C. Memo. 1986-569; see also Keanini v. Commissioner, 94 T.C. 41, 46 (1990); Dreicer v. Commissioner, 78 T.C. 642, 644-645 (1982), affd. without published opinion 702 F.2d 1205 (D.C. Cir. 1983); sec. 1.183-2(a), Income Tax Regs.

The existence of the requisite profit objective is a question of fact that must be decided on the basis of the entire record.  Elliott v. Commissioner, 84 T.C. 227, 236 (1985), affd. without published opinion 782 F.2d 1027 (3d Cir. 1986); Dreicer

v. Commissioner, supra at 645; sec. 1.183-2(b), Income Tax Regs. In resolving this factual question, greater weight is given to objective facts than to a taxpayer's statement of intent. See Westbrook v. Commissioner, 68 F.3d 868, 875-876 (5th Cir. 1995), affg. T.C. Memo. 1993-634; sec. 1.183-2(a), Income Tax Regs. The taxpayer bears the burden of proving the requisite profit objective. See Rule 142(a); Hayden v. Commissioner, supra at 1552; Golanty v. Commissioner, 72 T.C. 411, 426 (1979), affd. without published opinion 647 F.2d 170 (9th Cir. 1981).[4]

Section 1.183-2(b), Income Tax Regs., sets forth a nonexclusive list of factors to be considered in determining whether an activity is engaged in for profit. Campbell v. Commissioner, supra at 836. These factors are: (1) The manner in which the taxpayer carried on the activity; (2) the expertise of the taxpayer or his advisers; (3) the time and effort expended by the taxpayer in carrying on the activity; (4) the expectation that assets used in the activity may appreciate in value; (5) the success of the taxpayer in carrying on other similar or

---

[4]Petitioners contend that they have met the prerequisites for a shift in the burden of proof to respondent with respect to all factual issues under sec. 7491(a). For the burden of proof to shift to respondent, petitioners are required to cooperate with all reasonable requests for documents. See sec. 7491(a)(2). Petitioners did not produce the farming ledger or any other documents respondent requested until the day before trial. Accordingly, petitioners are not eligible for a shift in the burden of proof. See Rolfs v. Commissioner, 135 T.C. 471, 483-484 (2010); Assaf v. Commissioner, T.C. Memo. 2005-14.

dissimilar activities; (6) the taxpayer's history of income or loss with respect to the activity; (7) the amount of occasional profits, if any, which are earned; (8) the financial status of the taxpayer; and (9) whether elements of personal pleasure or recreation are involved. Sec. 1.183-2(b), Income Tax Regs. As no single factor is controlling, the facts and circumstances of the case taken as a whole are determinative. Abramson v. Commissioner, 86 T.C. 360, 371 (1986); sec. 1.183-2(b), Income Tax Regs.

2. Manner of Carrying On the Activity

For purposes of determining whether an activity is conducted in a businesslike manner, the regulations cite several factors that may indicate a profit objective, including maintaining complete and accurate books and records, carrying on an activity in a manner similar to other profitable activities of the same nature, and abandoning unprofitable methods or adopting new methods. Sec. 1.183-2(b)(1), Income Tax Regs. Petitioners maintained a farming ledger and kept receipts. While the farming ledger was informal at best, the recordkeeping required for a small farming operation is not rigorous. See Burrus v. Commissioner, T.C. Memo. 2003-285; Fields v. Commissioner, T.C. Memo. 1981-550; Edge v. Commissioner, T.C. Memo. 1973-274. A period of land preparation before the commencement of cattle operations is not unusual and does not show lack of a profit

objective.  See Fields v. Commissioner, supra.  Moreover, petitioners found buyers for their hay in the startup years before cattle were purchased.  In 2005, the year following the years at issue, petitioners first acquired cattle and owned 17 head of cattle by the close of that year.

While it is true that approximately 3 years elapsed between the completion of fencing in 2002 and petitioners' acquisition of cattle in 2005, we do not find this delay dispositive of the question of whether petitioners had a profit objective.  All the work on the farm was being performed by Mr. Stromatt and his elderly father-in-law.  In these circumstances, the delay in commencing cattle operations was not unreasonable and, in view of the fact that petitioners were producing and selling hay in the interim, we are satisfied that they had an honest, good-faith intention to develop a cattle operation.  This factor favors petitioners.

### 3.  Expertise of Petitioners and Their Advisers

Preparation for an activity by extensive study or consultation with experts may indicate a profit objective where the taxpayer conducts the activity in accordance with such study or advice.  See sec. 1.183-2(b)(2), Income Tax Regs.  Petitioners relied upon the advice and services of Mrs. Stromatt's father, an experienced farmer, who also performed much work on the farm.  In particular, Mrs. Stromatt's father advised petitioners as to the

acreage they would need to support a successful cattle operation. This factor favors petitioners.

### 4. Time and Effort Expended by Petitioners

The fact that taxpayers devote much of their personal time and effort to carrying on an activity, particularly if the activity does not have substantial personal or recreational aspects, may indicate a profit objective. See sec. 1.183-2(b)(3), Income Tax Regs. Petitioners expended substantial time and effort in operating the farm. Mr. Stromatt and Mrs. Stromatt's father did the initial land-clearing work, and then fertilized, installed the fencing, and harvested the hay during the years in issue. Mrs. Stromatt maintained the farming ledger. Mr. and Mrs. Stromatt's efforts in respect of petitioners' farming activity did not have any recreational aspect. This factor favors petitioners.

### 5. Expectation of Appreciation of Asset Values

An expectation that assets used in the activity will appreciate in value may indicate a profit objective. See sec. 1.183-2(b)(4), Income Tax Regs. While petitioners presented no specific evidence regarding the likelihood of any appreciation in value of the land or equipment used in petitioners' farming activity, it is apparent that clearing and fencing neglected land would likely increase its value. This factor favors petitioners.

### 6. Success in Similar or Dissimilar Activities

Taxpayers' past success in similar or dissimilar activities may indicate that their engagement in a presently unprofitable activity is for profit. See sec. 1.183-2(b)(5), Income Tax Regs. Petitioners have never owned a farm or operated any other kind of entrepreneurial business. Therefore, this factor favors respondent. See Lowe v. Commissioner, T.C. Memo. 2010-129; Zarins v. Commissioner, T.C. Memo. 2001-68, affd. 37 Fed. Appx. 747 (6th Cir. 2002).

### 7. History of Income or Loss

An activity's history of income or loss may reflect whether the taxpayers have a profit objective. See sec. 1.183-2(b)(6), Income Tax Regs. Petitioners' farming activity had only a short history of operating results when respondent determined that they lacked a profit objective. The operational results after 2004 are unreliable, however, because Mrs. Stromatt conceded that she stopped claiming all of the expenses of petitioners' farming activity after respondent commenced an examination in 2005 of the returns at issue. The years at issue are the third, fourth, and fifth years of operations. While there were losses in all these years, it is not a lengthy history and may reflect a reasonable startup period. See Fields v. Commissioner, supra ("initial losses are almost a certainty where repairs to and development of farmland are necessary to the growth and viability of the

operation"). Cases that found a history of losses as significant evidence of a lack of profit objective generally involved losses over a substantially longer period than in the instant case. See, e.g., <u>Hendricks v. Commissioner</u>, 32 F.3d 94, 96, 99 (4th Cir. 1994) (20 years of losses with 1 profitable year), affg. T.C. Memo. 1993-396; <u>Keelty v. Commissioner</u>, T.C. Memo. 1984-173 (15 years of losses with 1 profitable year); see also <u>Wise v. Commissioner</u>, T.C. Memo. 1957-83 (7 years of continuous losses not evidence of lack of profit objective where taxpayer was rehabilitating a neglected farm), affd. 260 F.2d 354 (6th Cir. 1958). This factor favors petitioners.

### 8. Amount of Occasional Profits

The amount of any occasional profits, if large in relation to losses incurred or the taxpayers' investment, may indicate a profit objective. See sec. 1.183-2(b)(7), Income Tax Regs. Petitioners' farming activity did not earn any profits during the years at issue, and the apparent profits recorded for 2006 and 2007 are illusory, since as noted Mrs. Stromatt concedes that she understated expenses for those years. This factor favors respondent.

### 9. Financial Status

Substantial income from sources other than the activity (particularly if the losses from the activity generate substantial tax benefits) may indicate that the activity is not

engaged in for profit.  See sec. 1.183-2(b)(8), Income Tax Regs. Petitioners had substantial income from other sources during the years at issue which was offset to the extent of their claimed farming activity losses.  This factor favors respondent.

### 10. Elements of Personal Pleasure or Recreation

The existence of recreational or personal elements in an activity may indicate that the activity is not engaged in for profit.  Sec. 1.183-2(b)(9), Income Tax Regs.  Petitioners' farming activity offered no significant recreational opportunities.  Instead, Mr. Stromatt performed arduous physical labor and Mrs. Stromatt provided bookkeeping services in connection with the activity.  Petitioners did not reside on the premises during the years in issue.  Cattle operations on farms without significant recreational facilities generally do not suggest a recreational aspect indicating a lack of a profit objective.  See Smith v. Commissioner, T.C. Memo. 2007-368, affd. 364 Fed. Appx. 317 (9th Cir. 2009); Burrus v. Commissioner, T.C. Memo. 2003-285; Fields v. Commissioner, T.C. Memo. 1981-550. This factor favors petitioners.

### 11. Conclusion

After weighing the regulatory factors and all other facts and circumstances, we conclude that petitioners engaged in their farming activity with an actual and honest profit objective. They and family members expended substantial amounts of physical

labor to reclaim and fence land in an effort to establish a viable cattle operation. They did so at a pace that was not unreasonable in the circumstances, and they offset some losses by initially selling hay. They obtained knowledgeable advice. Their loss history was both brief (as of the close of the last year in issue) and not atypical for reclaiming land and establishing a cattle operation. The enterprise did not offer significant recreational opportunities.

For the foregoing reasons, we hold that the losses claimed from petitioners' farming activity for 2002, 2003, and 2004 are not limited by section 183.

## II. Substantiation

Respondent also disallowed the claimed farming losses for the years at issue on the alternative ground that petitioners failed to substantiate their expenses. See sec. 6001; sec. 1.6001-1(a), Income Tax Regs. Respondent's contentions regarding substantiation are general, except for his pointing to petitioners' apparent failure to issue any Forms 1099-MISC, Miscellaneous Income, to Mrs. Stromatt's father for payments made to him.[5]

---

[5]Petitioners reported expenses for "labor hired" on their Schedule F for each year at issue. They credibly testified that these expenses represented amounts paid to Mrs. Stromatt's father for his services. In these circumstances, we find any failure by petitioners to issue Forms 1099-MISC with respect to their payments to Mrs. Stromatt's father to be of marginal relevance in determining whether they adequately substantiated their expenses.

On the basis of our review of petitioners' records of their farming activity, we are satisfied that their substantiation was adequate. Petitioners maintained summary ledgers and ledgers for specific items, which generally matched each other and the amounts reported on their returns. Mrs. Stromatt credibly testified that she generally kept receipts. Petitioners' return preparer credibly testified that she inspected both the farming ledger and the receipts in her preparation of the returns for each of the years at issue. Additionally, respondent's counsel conceded at trial that respondent's examining agent was satisfied with the substantiation of the items on the returns (although, according to respondent's counsel, the Appeals Office was not). On this record, we conclude that petitioners met the substantiation requirements of section 6001.

III. Accuracy-Related Penalties

Respondent determined accuracy-related penalties under section 6662(a) and (b)(1) for underpayments attributable to negligence. In his pretrial memorandum, respondent asserted that each year's underpayment was also attributable to a substantial understatement of income tax. See sec. 6662(b)(2). However, since we have found that there is no deficiency for any year,

there is no underpayment giving rise to any penalty under section 6662.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>for petitioners</u>.