FILED

**NOT FOR PUBLICATION**

DEC 28 2009

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| RHETT RANCE SMITH; et al., | No. 08-72402 |
| Petitioners - Appellants, | Tax Ct. Nos. 11902-05 |
| | 13225-05 |
| v. | 13227-05 |
| | 13228-05 |
| COMMISSIONER OF INTERNAL REVENUE, | |
| | MEMORANDUM [*] |
| Respondent - Appellee. | |

| | |
|---|---|
| J. ZANE SMITH; et al., | No. 08-74160 |
| Petitioners - Appellants, | Tax Ct. No. 13226-05 |
| v. | |
| COMMISSIONER OF INTERNAL REVENUE, | |
| Respondent - Appellee. | |

Appeal from a Decision of the
United States Tax Court

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

Argued and Submitted December 11, 2009
San Francisco, California

Before: B. FLETCHER, THOMAS and N.R. SMITH, Circuit Judges.

Joel Rance Smith ("Rance"), LaRhea Smith, Rhett Rance Smith (Rhett), Alice Avila Smith, J. Zane Smith ("Zane"), and Shannon R. Creese Smith appeal a decision of the United States Tax Court finding deficiencies and assessing penalties for tax years 1998, 1999, 2000, and 2001. Rhett and Alice also appeal deficiency findings for tax year 2002. We have jurisdiction pursuant to I.R.C. § 7482(a), and we affirm.

We review decisions of the Tax Court on the same basis as decisions in civil bench trials in United States District Court. I.R.C. § 7482(a)(1); *Kelley v. Comm'r.*, 45 F.3d 348, 350 (9th Cir. 1995). "Thus, the Tax Court's conclusions of law are examined *de novo*[ and] its factual findings are reviewed for clear error." *Kelley*, 45 F.3d at 350 (citations omitted). We review findings of negligence under I.R.C. § 6662 for clear error, "uphold[ing] the tax court's finding unless . . . left with the definite and firm conviction that a mistake has been committed." *Hansen v. Comm'r.*, 471 F.3d 1021, 1028 (9th Cir. 2006) (quotation marks omitted).

I

The Tax Court correctly concluded that the taxpayers were not entitled to deduct noncash charitable deductions because the taxpayers failed to comply, either fully or substantially, with the reporting requirements in I.R.C. § 170 and underlying regulations.

Before passage of the American Jobs Creation Act of 2004, Pub. L. No. 108-357, 118 Stat. 1418 ("the 2004 Act"), there was no reasonable reliance exception to the substantiation requirements. The legislative history of the Deficit Reduction Act of 1984, Pub. L. No. 98-369, 98 Stat. 494, ("the 1984 Act") supports this conclusion. The Senate amendment's reference to reasonable cause, whether or not tacitly included in the bill reported from conference, would not create an exception to be applied by the courts. Rather, it would give the I.R.S. discretion to waive the disallowance. *See* H.R. Conf. Rep. 98-861 at 994–95 (1984), *reprinted in* 1984 U.S.C.C.A.N. 1445, 1682–83; *see also* Staff of Joint Comm. on Taxation, 108th Cong., General Explanation of Tax Legislation Enacted in the 108th Congress 462 (Comm. Print 2005) (discussing the 2004 Act's reasonable cause exception in section that does not address preexisting regulations).

Nor are the Smiths helped by *Bond v. Comm'r.*, 100 T.C. 32 (1993) and *Hewitt v. Comm'r*, 109 T.C. 258 (1997), which are not concerned with the level of taxpayer fault. As *Hewitt* explains, the substantial compliance exception is based on "the principle objective of" the 1984 Act, which "was to provide a mechanism whereby [the I.R.S.] would obtain sufficient return information in support of the claimed valuation of charitable contributions of property to enable [it] to deal more effectively with the prevalent use of overvaluations." 109 T.C. at 265. Nor does *Bond* stand for the proposition that the statute is ambiguous, as urged by taxpayer's counsel at oral argument. *Bond* did not involve a question of statutory interpretation; the question in *Bond* was application of the substantial compliance test set forth in *Taylor v. Comm'r*, 67 T.C. 1071, 1077-78 (1977). *See Bond*, 100 T.C. at 40–42.

## II

Although the Tax Court should have held an evidentiary hearing on the question of whether a settlement agreement was reached as to the 2002 tax year, we conclude that the Tax Court did not commit reversible error in holding that there was no settlement. A settlement agreement requires "an objective manifestation of mutual assent to [the settlement's] essential terms." *Dorchester*

*Indus., Inc. v. Comm'r*, 108 T.C. 320, 330 (1997) (quotation marks and citation omitted).

The record supports a finding that the settlement offer was never accepted. The I.R.S. attorney's telephone log from February 21 stated that "settlement is looking good." His March 2 statement "we thought we had a settlement" is fairly interpreted to mean that he thought that the I.R.S. and the Smiths would be able to settle. Nor was his discussion regarding a possible prohibition on raising new issues in the case necessarily an admission that he had settled the case.

The taxpayers argue that the Tax Court used an improper subjective approach rather than an objective approach. However, when the decision is examined closely, with all subjective elements excised, there are sufficient findings to support the Tax Court's conclusion that there was not a sufficient objective manifestation of mutual assent to sustain the purported settlement agreement. As we have noted, it would have been preferable for the Tax Court to hold an evidentiary hearing on this question. However, that issue was not presented on appeal, and there are sufficient non-disputed facts contained in the record to sustain the Tax Court's conclusion.

Because we affirm the Tax Court's finding that no settlement was reached regarding 2002 cash contributions, we decline to reach the question of whether

such a settlement would have precluded the I.R.S. from raising the issue of noncash charitable contributions on the same year's return.

III

The Tax Court did not err in holding that: (1)  Rance and LaReah are responsible for I.R.C. § 6662 penalties for deducting losses for cutting horse activities—buying, boarding, riding, training, selling, and preparing to breed some number of horses, and (2)  Zane and Shannon are responsible for penalties for deducting losses for breeding and showing Staffordshire Bull Terriers and judging dog shows.

Treasury Regulations explain that reasonable reliance should not be found where a tax professional's advice was "based upon a representation or assumption which the taxpayer knows, or has reason to know, is unlikely to be true, such as an inaccurate representation or assumption as to the taxpayer's purposes for entering into a transaction or for structuring a transaction in a particular manner."  Treas. Reg. § 1.6664-4(c)(1)(ii); *see also* Treas. Reg. § 1.6664-4(c)(1) ("[T]he taxpayer's education, sophistication and business experience will be relevant in determining whether the taxpayer's reliance on tax advice was reasonable and made in good faith."); *Neonatology Assocs., P.A. v. Comm'r*, 115 T.C. 43, 99 (2000) ("[T]he

taxpayer must prove . . . [that he] provided necessary and accurate information to the adviser, and . . . actually relied in good faith on the adviser's judgment.").

Rance and Zane Smith are sophisticated businesspeople who failed to keep good or separate accounting of their dog breeding and cutting horse expenses. Moreover, Kramer had informed Rance of the possible repercussions if the I.R.S. determined that his losses actually derived from engagement in hobbies rather than for-profit businesses. It was not clear error for the Tax Court to find that Rance and Zane failed to show, by a preponderance of the evidence, that they acted with "good faith reliance on professional advice." *Collins v. Comm'r*, 857 F.2d 1383, 1386 (9th Cir. 1988); *see also Neonatology*, 115 T.C. at 99 (stating burden).

**AFFIRMED.**