T.C. Memo. 2013-239

UNITED STATES TAX COURT

PATRICK SCHLIEVERT AND SHIRLEY M. SCHLIEVERT, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 16113-12.                    Filed October 22, 2013.

Patrick Schlievert and Shirley M. Schlievert, pro se.

Stephen A. Haller, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

KROUPA, <u>Judge</u>:  Respondent determined an $11,302[1] deficiency in

petitioners' Federal income tax for 2010.  Respondent also determined that

_____

[1]All dollar amounts are rounded to the nearest whole number.

[*2] petitioners were liable for the accuracy-related penalty under section 6662(a)[2] for 2010.

We are asked to decide whether petitioners, a university professor and a homemaker, engaged in their record label activity for profit under section 183 during 2010. We hold that they did not engage in their record label activity with a bona fide profit objective and are therefore not entitled to deduct losses from the activity. We are also asked to decide whether petitioners are liable for the accuracy-related penalty under section 6662(a) for 2010. We hold that they are.

## FINDINGS OF FACT

The parties have stipulated some facts. We incorporate the stipulation of facts and the accompanying exhibits by this reference. Petitioners resided in Iowa when they filed the petition.

## I. Petitioners

Dr. Schlievert is a professor and the head of the Microbiology Department at the University of Iowa, Carver College of Medicine (University). Before becoming a professor, Dr. Schlievert worked as a geologist and pursued a Master's Degree in Science Education. Dr. Schlievert earned a $218,034 salary during

---

[2]All section references are to the Internal Revenue Code (Code) in effect for 2010, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated.

[*3] 2010 from the University. Mrs. Schlievert is a homemaker. Together petitioners have a net worth of $1.8 million.

Dr. Schlievert created and co-founded two biotechnology companies. These companies develop drugs to prevent and treat infectious diseases. One company is organized as an LLC while the other is incorporated. Each company employs an attorney, at least one Ph.D. scientist and a CEO. The companies are built on Dr. Schlievert's expertise in immunology and infectious diseases. The companies have a business plan and a timeline toward profitability but are not yet profitable.

Before 2010, petitioners had no experience with the music industry or record labels.

## II. Sara Schlievert and the Band

Sara Schlievert, petitioners' only child, attended the University of Southern California to study and major in Music Industry. Sara interned at Atlantic Records as an acquisitions and repertoire specialist.[3] While interning, Sara discovered the rock band The Gallery (band). The band, originally from Massachusetts, moved to California in hopes of making it big. The band was unable to sign with Atlantic Records. Sara subsequently began managing the band sometime in 2009. A year

---

[3]An acquisitions and repertoire specialist's principal duties are to find and recruit musical talent for a record company.

**[\*4]** later, Sara pitched the idea of producing the band's record to petitioners. Petitioners agreed.

Petitioners entered into an oral agreement (agreement) with the band to fund the band's expenses. The agreement provided that petitioners would be repaid for all expenses from any money the band received from a future record label advance or 50% of the money from record sales. Petitioners would also receive 10% of the amount over $200,000 that the band earned. The agreement also required that Sara continue to serve as the band's manager for a 15% fee.

## III.   SURF

Petitioners named their record label activity "Schlievert's Ultimate Record Facility" or "SURF" because Dr. Schlievert enjoys surfing. Petitioners have not registered SURF as a trademark nor advertised as SURF. Additionally, petitioners have not incorporated SURF nor organized SURF as an LLC. Petitioners' record label activity has never had a bank account or any employees. Nor has petitioners' record label activity invested in or sought out other bands. Petitioners have, however, read a book to inform themselves how the music business operates.[4]

---

[4]Petitioners testified to reading All You Need to Know About the Music Business by Donald S. Passman.

[*5] Petitioners also discussed their record label activity with University of California professors.

IV.    Record Label Activity

The agreement provided for Sara's fronting the band's expenses from her personal checking account or with her personal credit card. Petitioners would then reimburse Sara. Petitioners paid funds neither directly to the band nor for the band via a separate bank account. At trial, petitioners presented a list of itemized expenses but showed no receipts or invoices. Petitioners' record label activity sustained losses of $44,445 in 2010, $11,681 in 2011, and $1,000-$2,000 in 2012.

The band released an album in 2010, an extended play CD. Warren Huart produced the CD, and the band copyrighted its content. Inside the jacket cover the band gives "thanks" to petitioners, along with 32 other people. Petitioners did, however, retain the master recordings.

Since 2010, petitioners have invested less and less in the band and likewise in their record label activity. Petitioners have not pursued other talent or any other related activity aside from investing money in the band. In 2013, petitioners refrained entirely from investing in the band or their record label activity. Petitioners presented no evidence of gross receipts or sales of any kind except with

[*6] respect to the first quarter of 2013.[5] Petitioners concede that they are waiting to make any further investments until they can deduct expenses relating to their record label activity. The band, on the other hand, has continued to tour and to produce music.

## V.     Income Tax Returns

Petitioners filed a Form 1040 for 2010 and reported a $44,445 net loss on the attached Schedule C. The Schedule C described petitioners' business as "Record Label (Recording Industry)." Petitioners claimed $4,850 of advertising expenses, $617 of commissions and fees, $24,825 of legal and professional services, $2,633 of supplies and $11,790 of travel expenses. Petitioners reported no gross receipts or sales on the Schedule C and likewise reported no gross income.

Petitioners reported a $11,681 net loss on the Schedule C for the following year. The Schedule C for 2011 described petitioners' business as "Music Industry."

Respondent disallowed the Schedule C losses for 2010, determined a deficiency for that year and determined that petitioners were liable for an accuracy-related penalty. Petitioners timely filed a petition.

_____

[5]Petitioners had a $2,000 net profit for the first quarter of 2013.

**[\*7]**                                    OPINION

We must decide whether petitioners engaged in their record label activity

for profit under section 183 during 2010.  Respondent asserts that petitioners'

record label activity was nothing more than a means to support and help Sara,

petitioners' daughter, break into the music industry.  Petitioners, on the other

hand, contend their record label activity was conducted with a bona fide profit

objective.  We are also asked to decide whether petitioners are liable for the

accuracy-related penalty.  We address each of these issues in turn.

I.      Expense Deductions

We first address the burden of proof.  Generally, the Commissioner's

deficiency determination is presumed correct, and the taxpayer bears the burden of

proving the determination is improper.  See Rule 142(a)(1); Welch v. Helvering,

290 U.S. 111, 115 (1933); Evans v. Commissioner, 908 F.2d 369 (8th Cir. 1990),

rev'g T.C. Memo. 1988-468.

An appeal in this case would lie to the U.S. Court of Appeals for the Eighth

Circuit (Eighth Circuit) absent a stipulation to the contrary.  Where the Court of

Appeals to which appeal lies has decided an issue that is squarely in point, we will

follow the decision of that court.  Golsen v. Commissioner, 54 T.C. 742, 757

[*8] (1970), aff'd, 445 F.2d 985 (10th Cir. 1971).  The Eighth Circuit requires that a taxpayer have a bona fide objective of realizing profit from an activity to deduct expenses relating to that activity.  Evans v. Commissioner, 908 F.2d at 373; see also Taube v. Commissioner, 88 T.C. 464 (1987).  Accordingly, petitioners must prove they engaged in their record label activity with a bona fide profit objective to be entitled to deduct expenses relating to their record label activity.  See Evans v. Commissioner, 908 F.2d at 373.

We now turn to whether petitioners may deduct expenses related to their record label activity.  Deductions are allowed for all ordinary and necessary expenses paid or incurred during the tax year in carrying on a trade or business or for the production of income.  Secs. 162(a), 212(1).  We look to section 183 in conjunction with section 162 to determine whether an activity is engaged in for profit.  This Court considers whether an activity is engaged in for profit on a case-by-case basis, taking into account the facts and circumstances involved.  See Golanty v. Commissioner, 72 T.C. 411, 426 (1979), aff'd without published opinion, 647 F.2d 170 (9th Cir. 1981).  We structure our analysis of whether an activity is engaged in for profit around nine nonexclusive factors.  Sec. 1.183-2(b), Income Tax Regs.

[*9] The nine factors are: (1) the manner in which the taxpayer carried on the activity, (2) the expertise of the taxpayer or his or her advisers, (3) the time and effort the taxpayer expended in carrying on the activity, (4) the expectation that the assets used in the activity may appreciate in value, (5) the taxpayer's success in carrying on other similar or dissimilar activities, (6) the taxpayer's history of income or loss with respect to the activity, (7) the amount of occasional profits, if any, which are earned, (8) the taxpayer's financial status and (9) whether elements of personal pleasure or recreation are involved. Id.

No single factor or set of factors is determinative, nor is the existence of a majority of factors favoring or disfavoring a profit objective controlling. Verrett v. Commissioner, T.C. Memo. 2012-223; see Evans v. Commissioner, 908 F.2d at 373; sec. 1.183-2(b), Income Tax Regs. Certain factors may be given more weight than others because they are more relevant to the facts. See Vitale v. Commissioner, T.C. Memo. 1999-131, aff'd without published opinion, 217 F.3d 843 (4th Cir. 2000). Not all factors may apply in any case. See Green v. Commissioner, T.C. Memo. 1989-436; see also Akelis v. Commissioner, T.C. Memo. 1989-182. Greater weight is given to objective facts over the taxpayer's subjective intent. See Engdahl v. Commissioner, 72 T.C. 659, 666 (1979); sec.

**[*10]** 1.183-2(a) and (b), Income Tax Regs. We focus now on each of the nine factors, in turn.

1.     Manner in Which the Taxpayer Conducts the Activity

We begin by considering whether petitioners carried on their record label activity in a businesslike manner. See sec. 1.183.-2(b)(1), Income Tax Regs. We consider whether the taxpayer conducted the activity in a manner substantially similar to other activities of the same nature that were profitable and whether the taxpayer kept accurate books and records. Engdahl v. Commissioner, 72 T.C. at 666-667; Johnson v. Commissioner, T.C. Memo. 2012-231; Wilmot v. Commissioner, T.C. Memo. 2011-293; Smith v. Commissioner, T.C. Memo. 2007-368, aff'd, 364 Fed. Appx. 317 (9th Cir. 2009); sec. 1.183-2(b)(1), Income Tax Regs.

Petitioners contend that they carried on their record label activity in a businesslike manner by advertising, educating themselves and relying on experts in the music industry. Respondent contends that petitioners did not operate their record label activity like a business.

The trial record does not reflect that petitioners ran their record label activity like a business. Specifically, the trial record does not reflect that petitioners formed an entity (as they were advised to do) or prepared a business

**[*11]** plan, a profit or loss statement, a balance sheet or a financial break-even analysis for their record label activity. While a sophisticated business plan is not necessary, a taxpayer should keep records that enable the taxpayer to make informed business decisions. Burger v. Commissioner, 809 F.2d 355, 359 (7th Cir. 1987), aff'g T.C. Memo. 1985-523; Dodge v. Commissioner, T.C. Memo. 1998-89, aff'd without published opinion, 188 F.3d 507 (6th Cir. 1999). Theoretically, a business plan and records are used to develop a profitable business. Failure to maintain adequate records, however, indicates a lack of necessary profit intent. Montagne v. Commissioner, 166 Fed. Appx. 265 (8th Cir. 2006), aff'g T.C. Memo. 2004-252; Zidar v. Commissioner, T.C. Memo. 2001-200.

Further, Sara paid all of the band's expenses through her personal checking account or her personal credit card. Petitioners would then reimburse Sara. Petitioners provided a list of itemized expenses but provided no evidence of Sara's giving petitioners receipts or invoices of the band's expenses. Such commingling of funds indicates that an activity is more closely related to a hobby than a business. See Bush v. Commissioner, T.C. Memo. 2002-33, aff'd, 51 Fed. Appx. 422 (4th Cir. 2002); Lundquist v. Commissioner, T.C. Memo. 1999-83, aff'd without published opinion, 211 F.3d 600 (11th Cir. 2000).

**[\*12]**  Nor did petitioners pursue and produce music in a businesslike manner. Petitioners represent only one band and have made no effort to develop or find other talent.  Petitioners have no Internet presence for their music activity, no active presence in the recording or producing industry and have not sought methods to increase their exposure to the industry.  Unlike others in the music industry, petitioners do not represent any other bands, nor do they have any employees.  Due to the risky nature of the music industry, it is imprudent to work with only one band.

Petitioners never advertised as a record label.  Petitioners' activity is not even recognized as a record label on the only album they purportedly produced. Save for petitioners' being "thanked" on the CD jacket along with 32 other people, nowhere on the band's record is the label SURF or anything indicating petitioners' professional relationship with the band.  Rather, the copyright on the CD belongs to the band, and the production credits go to Warren Huart.

We are not questioning whether the band members are bona fide musicians. We are, however, questioning whether petitioners' relationship to the band was carried on in a businesslike manner.  Because petitioners do not invest in any other band, their record label activity is inextricably tied to the band's activity.  Here,

[*13] petitioners are conflating their record label activity with the legitimacy of the band.

We hold that petitioners did not conduct their record label activity in a businesslike manner.

This factor favors respondent.

2.    The Expertise of the Taxpayer or His or Her Advisers

We now turn to the second factor, the expertise of petitioners and their advisers.  Extensive study of accepted business principles or consultation with experts in the given field may demonstrate a profit motive.  Sec. 1.183-2(b)(2), Income Tax Regs.  Additionally, a taxpayer should undertake a bona fide investigation of factors that would affect the activity's profitability.  Burger v. Commissioner, 809 F.2d at 359; Golanty v. Commissioner, 72 T.C. at 432; Mitchell v. Commissioner, T.C. Memo. 2001-269; Underwood v. Commissioner, T.C. Memo. 1989-625.

Petitioners argue that they took steps to educate themselves and consulted experts about the music industry.  Petitioners talked to University of California professors, read a book and relied heavily on their daughter because they themselves have no experience or background in the music industry.

**[*14]** Petitioners testified to having consulted University of California professors who told them that it is common practice to have an oral contract with a band. The trial record does not reflect, however, the nature of the professors' expertise. Nor does the trial record provide a basis for us to believe that the professors petitioners consulted at the University of California were experts in the music industry. Further, investing large sums of money, as petitioners here did, over an extended period and without a written contract is poor business practice, even if done pursuant to advice. Petitioners were also encouraged to form an LLC for liability purposes, yet they appear to have ignored that advice.

Petitioners also read a book about the music business. We are not convinced, however, that petitioners heeded the advice in the book they read. Moreover, one book does not an expert make.

Finally, petitioners contend they relied on Sara's expertise. Sara majored in Music Industry, interned in the industry and managed the band for a year before petitioners began funding the band. We do not question Sara's enthusiasm for the music industry. We do, however, question her expertise. Sara had no experience managing any other band. And a degree coupled with an internship in any field falls short of qualifying anyone as an expert. We give little weight to petitioners' reliance on Sara as an expert.

**[\*15]** The trial record does not show that petitioners sought reliable advice on how to operate a record label.

This factor favors respondent.

### 3. The Taxpayer's Time and Effort

The amount of time and effort petitioners expended in carrying on the activity is the third factor. See sec 1.183-2(b)(3), Income Tax Regs. A taxpayer who dedicates a substantial amount of personal time and effort to the activity may have a profit objective, especially where the activity does not involve substantial personal or recreational aspects. Giles v. Commissioner, T.C. Memo. 2005-28. If, however, a taxpayer spends little time and effort on the activity but hires a competent and qualified person to carry on the activity, a profit motive may still be indicated. Burrus v. Commissioner, T.C. Memo. 2003-285.

Dr. Schlievert purportedly devoted a substantial amount of time and effort to their record label activity. The objective facts, however, contradict his assertion. Dr. Schlievert is a full-time professor, the head of the Microbiology Department at the University and a co-founder of two other companies in that field. Mrs. Schlievert did not testify to contributing any amount of time to their record label activity. Although a taxpayer may engage in more than one trade or business at any one time, it is unlikely petitioners were able to devote a substantial

**[\*16]** amount of time and effort to their record label activity.  See Gestrich v.

Commissioner, 74 T.C. 525, 529 (1980), aff'd without published opinion, 681

F.2d 805 (3d Cir. 1982); Storey v. Commissioner, T.C. Memo. 2013-59; Vitale v.

Commissioner, T.C. Memo. 1999-131.

Petitioners emphasize that they financed Warren Huart, a prominent record

producer, to produce the band's CD.  Mr. Huart, however, was not an employee of

petitioners' record label activity.  Here, again, petitioners are conflating the

activities of the band (paying someone to produce the band's record) with the

activity of providing funds to the band.  Petitioners admit that their record label

activity had no employees.

Petitioners failed to hire a qualified and competent person to carry on their

record label activity.  Thus, this factor favors respondent because petitioners did

not have any employees and did not spend a substantial amount of time on the

activity.

> 4.    Expectation That Property Will Appreciate in Value

Next, we turn to whether there is an expectation that the assets used in the

activity will increase in value.  A taxpayer may intend to reap a profit not only

from the operation of an activity but also from the appreciation of assets used in

the activity.  Sec. 1.183-2(b)(4), Income Tax Regs.  The test is whether there was a

**[*17]** bona fide expectation that the assets used in the activity would increase in value. Engdahl v. Commissioner, 72 T.C. at 669. Although an appreciation expectation may indicate a profit objective, expectation alone is not sufficient to demonstrate the activity was engaged in for profit. Sanders v. Commissioner, T.C. Memo. 1999-208; Lujan v. Commissioner, T.C. Memo. 1992-417; Beltran v. Commissioner, T.C. Memo. 1982-153.

Petitioners own the master recording of the songs used to produce the band's CD. If the band were to be successful, petitioners might expect the master recording to increase in value. Nowhere in the trial record, however, is the value of the master recording, much less the amount petitioners expect the recording to be worth in the future. The recording may, in fact, greatly appreciate. The chance of great appreciation, however, is low.

This factor is neutral.

5.      Taxpayer's Success in Other Similar or Dissimilar Activities

We now look to petitioners' success in other activities. Finding that a taxpayer has successfully engaged in making other activities profitable may show that the taxpayer has a profit objective even though the current activity is unprofitable. Sec. 1.183-2(b)(5), Income Tax Regs. Petitioners argue that their background and experience co-founding two biotechnology companies lends

[*18] credence to qualifying their record label activity as a trade or business. Respondent argues that petitioners' lack of experience or success in the music industry is in line with a lack of profit motive. We agree with respondent.

Dr. Schlievert established two biotechnology companies. The biotechnology companies have a timeline toward profitability and are built on Dr. Schlievert's expertise in immunology and infectious diseases. Neither company is, however, profitable. Petitioners' record label activity, on the other hand, has no employees, no apparent business plan and no timeline toward profitability. Furthermore, Dr. Schlievert's only connection to the music industry is through his daughter.

The manner in which the biotechnology companies are run is vastly different from that of petitioners' record label activity. For example, each biotechnology company employs professionals and has a business plan. Their record label activity, in contrast, had neither employees nor a business plan. The manner in which petitioners carried on their record label activity makes it less likely that they entered into their record label activity with a bona fide profit motive.

This factor favors respondent.

[*19] 6.     Taxpayer's History of Income or Loss and Amount of Profits

We next examine the sixth and seventh factors, petitioners' history of income or losses and any amount of profits, in tandem. Sec. 1.183-2(b)(6) and (7), Income Tax Regs. Losses during the startup stage of an activity may or may not signal that the activity is engaged in for profit. Sec. 1.183-2(b)(6), Income Tax Regs. Substantial losses may, however, indicate that the taxpayer did not conduct the activity for profit. Golanty v. Commissioner,72 T.C. at 427; sec. 1.183-2(b)(6), Income Tax Regs. We also consider the amount of occasional profits, if any, from the activity. Sec. 1.183-2(b)(7), Income Tax Regs. Absent actual profits, a showing of potentially substantial returns could indicate a profit motive. See Giles v. Commissioner, T.C. Memo. 2005-28; Dawson v. Commissioner, T.C. Memo. 1996-417.

Petitioners had no gross receipts or sales in 2010. Accordingly, petitioners reported no income from their record label activity for 2010. For the two years after 2010, petitioners claimed losses. The only income petitioners report is $2,000 for the first quarter of 2013. Since 2010, petitioners have spent substantially less on the band each year and have not spent anything on the band in 2013.

[*20] Our examination of the agreement indicates that, theoretically, petitioners should have received 50% of the band's income from sales beginning in 2010. The trial record shows the band released its CD and was selling tickets to shows during 2010. Petitioners did not receive any proceeds until three years later, however. Although the band's profits were minimal, if the agreement had been respected, petitioners would have received a portion of the band's sales income. It therefore appears as though profit was not petitioners' primary motive because they failed to collect revenue in 2010.

Petitioners concede that they are refraining from any further investing until they are able to deduct expenses related to their record label activity. This concession is particularly detrimental to petitioners' argument because profit must be the primary objective for expenses to be deductible and profit means economic profit, independent of tax savings. See Surloff v. Commissioner, 81 T.C. 210, 233 (1983); Shapiro v. Commissioner, 40 T.C. 34 (1963).

Petitioners have discontinued investing in the band even though the band has continued to tour and produce music. We are unpersuaded by petitioners' reliance on the band's activities to legitimize their own attempt to deduct expenses relating to their record label activity.

These factors favor respondent.

[*21] 7.     Financial Status of the Taxpayer

We now look to petitioners' financial status.  Substantial income from sources other than the activity may indicate that the activity is not engaged in for profit.  This is especially true where there are personal or recreational elements involved.  Sec. 1.183-2(b)(8), Income Tax Regs.  Substantial income from other sources may indicate the activity is not engaged in for profit, as losses from the activity would generate substantial tax benefits.  Id.; see Dirkse v. Commissioner, T.C. Memo. 2000-356; Kahla v. Commissioner, T.C. Memo. 2000-127, aff'd, 273 F.3d 1096 (5th Cir. 2001).

Respondent argues that petitioners' substantial wealth and income enabled them to fund their daughter's band promotion without affecting their living standards.  Petitioners nevertheless argue that, as a matter of public policy, this Court should recognize the legitimacy of their record label activity to encourage economic development.  Petitioners' counterargument that we should encourage entrepreneurship is both creative and lacking in merit.

Dr. Schlievert has earned a substantial income as a successful microbiologist and academic.  And with a net worth of at least $1.8 million, petitioners had sufficient wealth and income to fund the band while simultaneously assisting their daughter to pursue her chosen career.  Furthermore,

**[*22]** the lack of profitability also benefited petitioners because they would have paid more tax but for the deduction of the expenses.

This factor favors respondent.

8.    Elements of Personal Pleasure

Finally, we weigh elements of personal pleasure in carrying on the activity. Personal or recreational motives in conducting an activity may indicate a lack of profit objective. Sec. 1.183-2(b)(9), Income Tax Regs. Respondent argues that petitioners derived personal pleasure in watching their daughter succeed in her field of choice. Petitioners argue that their record label activity is not a hobby and that they derived no recreational benefit from carrying on their record label activity.

This case is not significantly different from any other case where this Court has denied a parent's attempt to deduct investments in his or her child's career. See Bernardo v. Commissioner, T.C. Memo. 2004-199 (taxpayer lacked requisite profit motive for deducting expenditures she made to further daughter's singing career); Bush v. Commissioner, T.C. Memo. 2002-33 (taxpayer did not engage in managing his daughter's ballet career with a profit motive); McCarthy v. Commissioner, T.C. Memo. 2000-135 (taxpayer did not engage in managing his son's motocross racing with intent to make a profit);  DeMattia v. Commissioner,

**[\*23]** T.C. Memo. 1998-87 (taxpayer's golf sponsorship agreement with his son was not entered into with an honest objective of making a profit); <u>Nova v. Commissioner</u>, T.C. Memo. 1993-563 (same).

Petitioners had no connection to the music industry or the band until Sara facilitated the agreement between the two parties. Petitioners entered into the agreement with the band at an important time in Sara's life. Sara was not yet employed full time, and petitioners were still supporting her by paying her living expenses. By requiring the band to keep Sara on as their manager for a 15% fee, petitioners sought to provide Sara with valuable experience as well as an income. Sara is now fully employed and is progressing in her career. Instead of finding new bands and expanding their opportunities, petitioners have discontinued investing in their record label activity. Supporting Sara, though laudable, is not deductible.

After considering all the factors as applied to the unique facts and circumstances of this case and all other facts we consider relevant, we conclude that petitioners did not engage in their record label activity for profit within the meaning of section 183. Therefore, petitioners are not entitled to deduct expenses in excess of gross income from the activity.

**[\*24]** II.    <u>Accuracy-Related Penalty</u>

We now focus on whether petitioners are liable for an accuracy-related penalty under section 6662(a) for 2010.  A taxpayer is liable for an accuracy-related penalty on any part of an underpayment attributable to either a substantial understatement of income tax or negligence or disregard of rules or regulations.  Sec. 6662(b)(1) and (2).  A "substantial understatement" includes an understatement of income tax that exceeds the greater of 10% of the tax required to be shown on the return or $5,000.  Sec. 6662(a), (b)(2), (d)(1)(A); sec. 1.6662-4(a), Income Tax Regs.  "Negligence" includes any failure to make a reasonable attempt to comply with the Code or to exercise ordinary and reasonable care in preparing a tax return.  Sec. 6662(c); sec. 1.6662-3(b)(1), Income Tax Regs.  A taxpayer fails to make a reasonable attempt to ascertain the correctness of a deduction on a return that would seem to a reasonable and prudent person to be "too good to be true" under the circumstances.  Sec. 1.6662-3(b)(1)(ii), Income Tax Regs.

The Commissioner has the burden of production and must come forward with sufficient evidence showing that it is appropriate to impose a penalty.  Sec. 7491(c); see <u>Higbee v. Commissioner</u>, 116 T.C. 438, 446-447 (2001).  The taxpayer bears the burden of proof as to any defense to the accuracy-related

[*25] penalty, such as reasonable cause.  Sec. 7491(c); Rule 142(a); Higbee v. Commissioner, 116 T.C. at 446.

Respondent has met his burden of production with respect to petitioners' substantial understatement of income tax.  See sec. 6662(b)(2).  The record indicates that petitioners reported income tax of $31,778 for 2010.  As explained above, petitioners understated their income tax liability for 2010 by $11,302.  The tax required to be shown on the return, for purposes of determining whether there was a substantial understatement of income tax here, is the sum of these two amounts, $43,080.  Ten percent of the tax required to be shown on the return is $4,308.  The understatement of $11,302 is greater than $5,000, which is greater than 10% of the tax required to be shown on the return.  Respondent therefore met his burden of production.

Petitioners do not address the penalty issue in their brief.  Nor did petitioners present evidence that they had reasonable cause for any portion of any underpayment.  We therefore find that petitioners are liable for the penalty.

We have considered all remaining arguments the parties made and, to the extent not addressed, we find them to be irrelevant, moot or meritless.

[*26]  To reflect the foregoing,

<u>Decision will be entered</u>

<u>for respondent</u>.